UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN DOE,<br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>CLARK UNIVERSITY, DAVID P. ANGEL,<br>Ph.D., NADJA JOHNSON, Ph.D., LYNN S.<br>LEVEY, ADAM J. KEYES, HOLLY<br>DOLAN, EVETTE WALTERS, JEFFREY<br>McMASTER, CHERILYN BONIN, JANE<br>SMITH, and DAVIS BAIRD, PROVOST,<br>　　　　　　Defendants. | C.A. No.: 4:19-cv-40050-TSH |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CLARK UNIVERSITY'S
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

STANDARD OF REVIEW....................................................................................................7

ARGUMENT .....................................................................................................................7

I.      SUMMARY JUDGMENT SHOULD BE ENTERED FOR CLARK ON DOE'S TITLE IX CLAIM. ...........................................................................................7

    A.    THERE IS NO EVIDENCE OF DISCRIMINATION BASED ON DOE'S SEX. ..........................8

    B.    DOE'S TITLE IX CLAIM ALSO FAILS BECAUSE, EVEN IF HE COULD IDENTIFY ANY EVIDENCE SUGGESTING DISCRIMINATION, HE CANNOT CAUSALLY CONNECT ANY GENDER BIAS TO THE OUTCOME OF THE SOHB PROCESS........................................10

II.     DOE'S BREACH-OF-CONTRACT CLAIM FAILS. ..................................................11

    A.    THE UNIVERSITY FOLLOWED AND DID NOT BREACH ITS POLICIES, MEETING DOE'S REASONABLE EXPECTATIONS. ......................................................................12

    B.    THE UNIVERSITY POLICIES AND ITS ACTIONS IN THIS MATTER PROVIDED DOE THE BASIC FAIRNESS REQUIRED BY MASSACHUSETTS LAW. ....................................16

III.    DOE CANNOT ESTABLISH A BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING. ..................................................................................18

CONCLUSION..................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anthony's Pier Four, Inc. v. HBC Assocs.*,
411 Mass. 451 (1991) .............................................................................18

*Ayala-Gerena v. Bristol Myers-Squibb Co.*,
95 F.3d 86 (1st Cir. 1996)........................................................................11

*Ayash v. Dana-Farber Cancer Inst.*,
443 Mass. 367 (2005) .............................................................................18

*Conservation Law Found., Inc. v. U.S. E.P.A.*,
964 F. Supp .2d 175, 182 (D. Mass. 2013) ...........................................7

*Doe v. Amherst Coll.*,
238 F. Supp. 3d 195 (D. Mass. 2017) ...................................................10

*Doe v. Brandeis Univ.*,
177 F. Supp. 3d 561 (D. Mass. 2016) ...................................................15

*Doe v. Harvard Univ.*,
No. 1:18-cv-12150-IT, 2020 WL 2769945 (D. Mass. May 28, 2020) ...................10

*Doe v. Stonehill Coll.*,
No. 20-10468-LTS, 2021 WL 706228 (D. Mass. Feb. 23, 2021)..........................11, 12, 17, 19

*Doe v. Trustees of Boston Coll.*,
892 F.3d 67 (1st Cir. 2018).......................................................10, 14

*Doe v. Trustees of Boston Coll.*,
942 F.3d 527 (1st Cir. 2019).....................................................17, 18

*Doe v. W. New England Univ.*,
228 F. Supp. 3d 154 (D. Mass. 2017) .....................................................9

*Doe v. Williams Coll.*,
530 F. Supp. 3d 92 (D. Mass. 2021) ...................................................9, 17

*G v. Fay Sch., Inc.*,
282 F. Supp. 3d 381 (D. Mass. 2017) ...................................................14

*Lang v. Wal-Mart Stores E., L.P.*,
813 F.3d 447 (1st Cir. 2016).......................................................11

*Pazol v. Tough Mudder Inc.*,
    384 F. Supp. 3d 191 (D. Mass 2019) (Hillman, J.)...................................................................19

*Quinn v. City of Boston*,
    325 F.3d 18 (1st Cir. 2003)..........................................................................................................9

*Roe v. Northeastern Univ.*,
    No. CV 16-03335-C, 2019 WL 1141291 (Mass. Super. Mar. 8, 2019) ...................................15

*Shri Gayatri, LLC v. Charter Oak Fire Ins. Co.*,
    206 F. Supp. 3d 684 (D. Mass. 2016) (Hillman, J.)................................................................19

*Sonoiki v. Harvard Univ.*,
    No. 19-cv-12172, 2020 WL 3416516 (D. Mass. June 22, 2020).......................................16, 17

*Tombeno v. FedEx Corp. Servs., Inc.*,
    284 F. Supp. 3d 80 (D. Mass. 2018) ........................................................................................7

*Vazquez v. Lopez-Rosario*,
    134 F.3d 28 (1st Cir. 1998)........................................................................................................7

*Walker v. Pres. & Fellows of Harvard Coll.*,
    840 F.3d 57 (1st Cir. 2016)......................................................................................................14

**Statutes**

20 U.S.C. § 1681(a) ...........................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 56(a) ..........................................................................................................................7

Local Rule 7.1(a)(2)..........................................................................................................................13

**Introduction**

All counts of plaintiff John Doe's Complaint against defendant Clark University ("Clark" or the "University") fail as a matter of law.[1] Doe, a student at Clark University, was the subject of a sexual offense complaint made by another student, Jane Smith. Doe was found to have violated the University's policy prohibiting sexual exploitation when he, according to Smith, removed his condom during sexual intercourse without her consent and ejaculated. The University's Sexual Offense Hearing Board issued a nominal sanction against Doe, including that he write a reflection paper regarding the impact of the incident, and Doe refused to comply with that sanction.

Doe alleges that Clark discriminated against him on the basis of his sex (male) in violation of Title IX and that gender bias led to an erroneous outcome in the College's sexual offense procedure (Count I). He also alleges that Clark breached its contract with him and violated the covenant of good faith and fair dealing by not strictly adhering to its published sexual offense policies and/or by violating principles of basic fairness in applying those policies (Counts II and III).[2]

The undisputed admissible evidence demonstrates as a matter of law that these claims fail. Doe admits that there is no evidence of sex discrimination by the University and that the University followed its policies in all material respects. The process afforded to him meets and exceeds the requirements of Title IX and of basic fairness principles as defined by Massachusetts law. Accordingly, the Court should dismiss all remaining counts against Clark.

---

[1] On September 30, 2019, this Court dismissed the counts of Doe's Complaint against the Clark University individual defendants (David Angel, Nadja Johnson, Lynn Levey, Adam Keyes, Holly Dolan, Evette Walters, Jeffrey McMaster, Cherilyn Bonin, and Davis Baird). *See* ECF Dkt. 37. Jane Smith currently remains a defendant in this action.

[2] Doe has agreed to voluntarily dismiss Counts IV (Defamation) and V (Declaratory Judgment) of his Complaint against Clark.

### Factual Background

Doe is a current student at Clark. In the Fall of 2018, he was an incoming freshman. Def.'s Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ("SOF") ¶ 1. Defendant Jane Smith was his peer advisor for orientation before the start of the school year. *Id.* at ¶ 2. They developed a friendly relationship. *Id.* On the night of Friday, September 21, 2018, Doe and Smith went out to dinner together as part of a larger group and then were each out socializing at various on- and off-campus locations during the night. *Id.* at ¶¶ 3-5. After exchanging several text messages about what they were doing and where they were, Smith invited Doe to come to her on-campus residence hall suite at around 1:00 a.m., in the early hours of September 22, 2018. *Id.* at ¶ 7. Doe entered through the window. *Id.* Both Doe and Smith had been drinking alcohol that evening, but both deny being overly intoxicated or incapacitated. *Id.* at ¶¶ 5-6.

In Smith's bedroom, Doe and Smith began to engage in consensual vaginal intercourse using a condom. *Id.* at ¶ 8. Doe lost his erection, and Smith then performed oral sex on him. *Id.* The condom was removed for oral sex, which was consensual. *Id.* Doe regained an erection and they agreed to resume vaginal intercourse. *Id.* Smith claims she insisted Doe use a condom again and only consented to sex with a condom. *Id.* at ¶ 9. Smith also claims Doe was begrudging to the idea, telling her that he did not like using condoms. *Id.* at ¶ 10. Doe claims that he used a condom during the second instance of intercourse. *Id.* at ¶ 13. Smith, however, claims that when she turned around immediately following conclusion of the sexual intercourse, she did not observe Doe wearing a condom. *Id.* at ¶ 12. She claims that she felt Doe ejaculate inside her, and that she had Doe's semen on her leg immediately following the second instance of intercourse, which indicated to her that he had not been wearing a condom during that second instance. *Id.* at ¶ 11. Smith reports that she needed to shower after the encounter to wash the semen off of her.

*Id.* On this point, Smith submitted the following written statement during the investigation process: "I wanted to wash him off me right after so I got into the shower." *Id.*

Immediately after the sex, Smith asked Doe if he had sex with her without wearing a condom, and he said he did not. *Id.* at ¶ 13. Doe claims he showed her two condoms in his hand, while Smith claims she never saw a second condom. *Id.* at ¶ 14. Smith asked Doe if she needed to take "Plan B" contraception. *Id.* at ¶ 16. Doe initially told her it was not necessary, but then after being asked again, stated that she could take it if she wanted to. *Id.*

Doe claims that he took both used condoms with him in the pocket of his sweater when he left Smith's room and threw them away in the trash outside of his residence hall. *Id.* at ¶ 17. The following day, Doe texted Smith, appearing to inquire if everything was alright, and also seeking to retrieve his belt that he left in her room. *Id.* at ¶ 18. The two met, and Smith insisted that Doe pay for her Plan B contraceptives. *Id.* Doe eventually agreed to split the cost and paid Smith $34.00. *Id.*

A few days later, Smith informed a resident advisor about the incident, and it was reported up to Lynn Levey, Clark's Title IX Coordinator. *Id.* at ¶ 19. Levey spoke with Smith by phone and then met with her. *Id.* at ¶ 20. Smith never submitted a complaint in writing, and a written complaint was not required by Clark policy in order for it to initiate an investigation. *Id.* at ¶¶ 20-21.

Levey assigned Adam Keyes (Associate Dean of Students and Deputy Title IX Coordinator) and Holly Dolan (Professor of Practice and Education Department Chair) to investigate Smith's complaint in accordance with the University's sexual offense policy. *Id.* at ¶¶ 25, 38-39. On October 1, 2018, Keyes and Dolan sent a letter to Doe informing him that Clark was moving forward with an investigation based on information received by the Title IX office

3

regarding a possible violation of Clark's sexual offense policy. *Id.* at ¶ 26. The letter stated that Doe was being investigated for possible sexual exploitation and sexual assault violations involving Smith. *Id.* This provided the notice required by Clark's policies. *Id.* at ¶ 30. It also provided Doe with links to the relevant University Title IX and sexual offense policies, and Doe reviewed those policies after receiving the letter. *Id.* at ¶ 26. Doe did not have any objection to the appointment of Keyes and Dolan as investigators, nor did he have any reason to believe they could not be fair in investigating his case. *Id.* at ¶ 37.

Keyes met with Doe and Smith twice each, and Dolan met with Doe once and Smith twice. *Id.* at ¶ 41. Doe and Smith had the opportunity to submit information and evidence and identify witnesses, all of which the investigators considered. *Id.* at ¶¶ 43, 49. Doe in fact submitted evidence to the investigators, including his text messages with Smith. *Id.* at ¶ 49. He did not want the investigators to interview any additional witnesses. *Id.* at ¶ 47. Doe was permitted to have an attorney or advisor present for all of the meetings and proceedings. *Id.* at ¶ 33.

On October 18, 2018, Keyes and Dolan issued their investigation report, which concluded that a Sexual Offense Hearing Board ("SOHB") should be convened to determine whether Doe was responsible for sexual exploitation under the University's policy. *Id.* at ¶ 53. Doe and Smith had access to review the complete investigation report, and Doe and his attorney reviewed it and submitted a written response to it. *Id.* at ¶ 61.

Clark convened the SOHB and informed Doe and Smith about the hearing board on November 1, 2018. *Id.* at ¶ 65. The board was chaired by Dr. Nadja Johnson (Assistant Dean of Students) and was additionally comprised of Evette Walters (Assistant Director of Academic Advising), Jeff McMaster (Director of Student Accounts), and Cherilyn Bonin (Student Success

4

Specialist). *Id.* at ¶¶ 69, 71-74. Clark informed Doe and Smith of the members of the SOHB in advance of the hearing. *Id.* at ¶ 70. Doe did not identify any conflicts with any members of the board or have any reason to believe that any of them would be unable to serve impartially. *Id.*

The hearing board took place on November 16, 2018 and was audio recorded. *Id.* at ¶ 75. At the time of the hearing, Doe knew everything he felt he needed to know about Smith's allegations against him. *Id.* at ¶ 76. The Chair of the SOHB, Johnson, assisted the SOHB members with the process of the hearing but did not participate in the decision making and did not vote. *Id.* at ¶¶ 80-82. The audio recording of the hearing includes recorded audio from a six-minute break in the hearing, during which Johnson explained some applicable definitions and the process to the SOHB members and reminded them to deliberate only once the hearing was complete and they had heard from all parties. *Id.* at ¶¶ 77-78. Johnson was present for deliberations after the conclusion of the hearing but did not participate in them. *Id.* at ¶¶ 80-82. After deliberations, Johnson instructed the board members to vote "responsible" or "not responsible" on pieces of paper and to hand them to Johnson. *Id.* at ¶ 83. The three SOHB members unanimously voted "responsible," finding Doe responsible for violating the sexual exploitation provision of Clark's sexual offense policy. *Id.* In reaching their finding, all of the board members found it persuasive that Smith stated several times that she needed to shower immediately after the incident to wash "him" off of her, suggesting that a condom was not used and there was semen on her. *Id.* at ¶ 84.

On November 21, 2018, Johnson sent a letter to Doe informing him of the findings and decision made by the SOHB. *Id.* at ¶¶ 86-88. His sanctions were that he was required to participate in educational training directed by the Title IX Coordinator, that he was restricted from holding any student leadership roles on campus for a full academic year, and that the no-

contact order between him and Smith would remain in effect for another full academic year. *Id.* at ¶ 89. The letter informed Doe of his right to appeal on the basis of a procedural error or newly discovered evidence within five days. *Id.* at ¶ 93. Doe's attorney submitted a letter of appeal on November 26, 2018. *Id.* at ¶ 94. On December 6, 2018, Provost David Baird responded by letter denying the appeal, finding no procedural error (Doe's attorney did not raise an argument that there was any newly discovered evidence that should be considered). *Id.*

Levey met with Doe regarding the educational training component of his sanctions on February 5, 2019. *Id.* at ¶ 96. Doe's attorney attended that meeting. *Id.* For the educational training, Doe was required to write a 2-3 page paper reflecting on who was hurt, harmed, or affected by the incident. *Id.* at ¶ 97. The paper was due on February 14, 2019, and Doe was informed that if he did not comply with the sanctions and complete the assignment, he may be charged with noncompliance with University officials. *Id.*

Doe did not submit the reflection paper. *Id.* at ¶¶ 98-99. He contends that writing the paper would have amounted to him "confessing" or "admitting guilt," but he acknowledges the assignment did not require him to write that Smith was harmed and that he could have written that *he* was the only one harmed by the process (but he did not). *Id.* at ¶ 98. He knew that his refusal to write the reflection paper would result in additional sanctions. *Id.* at ¶ 99. On February 28, 2019, Levey sent Doe a letter regarding his failure to complete the paper and informing him that the matter would be referred to Kate Cassidy (Student Conduct Chair and Director of Campus Life for Residential Life & Housing). *Id.* at ¶ 100. A University Conduct Board hearing was held on March 29, 2019, and the Conduct Board found Doe responsible for violating the "Non-Compliance with a University Official" provision of the handbook. *Id.* at ¶ 101. The Conduct Board imposed additional sanctions including a new deadline of April 12, 2019 to

complete the paper due to Levey, and a new, longer, 750-word reflection paper due by March 29, 2019. *Id.* at ¶ 102. Rather than writing the reflection papers, Doe filed the instant litigation on April 5, 2019.

**Standard of Review**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998); *see also Conservation Law Found., Inc. v. U.S. E.P.A.*, 964 F. Supp .2d 175, 182 (D. Mass. 2013) ("The evidence relied upon in determining whether or not there exists a genuine dispute of material fact must be admissible."). "If the nonmoving party's argument states merely conclusory allegations, improbable inferences, and unsupported speculation, summary judgment for the moving party is appropriate." *Tombeno v. FedEx Corp. Servs., Inc.*, 284 F. Supp. 3d 80, 86 (D. Mass. 2018).

**Argument**

The University seeks summary judgment on all remaining counts of Doe's Complaint: alleged Title IX discrimination, and alleged breach of contract and the implied covenant of good faith and fair dealing. Doe admits that he has no admissible evidence of discrimination. Additionally, he acknowledges that Clark followed its policies in all material respects. Clark's policies meet the required level of basic fairness under Massachusetts law. This action, therefore, should be resolved in Clark's favor and dismissed on summary judgment.

I.      **Summary judgment should be entered for Clark on Doe's Title IX claim.**

Title IX provides that no person shall, on the basis of sex, be subject to discrimination under any education program or activity receiving federal financial assistance. 20 U.S.C. §

1681(a). Doe's Complaint broadly alleges that he was subjected to bias and discrimination based on his sex, and that such discrimination resulted in an erroneous finding of responsibility for violating Clark's sexual offense policies.[3] This claim fails because Doe admitted at his deposition that he has no evidence of discrimination by Clark. Further, even if Doe were to produce some evidence suggesting bias, there is no causal connection between it and the outcome of the Clark sexual offense proceeding.

### A.      There is no evidence of discrimination based on Doe's sex.

Doe admits that he has absolutely no evidence suggesting discrimination by Clark based on his sex. His deposition testimony is fatal to his claim. He answered under oath as follows:

> Q:    Can you share any information that you have indicating that Clark University treated you unfairly in this matter because of your sex?
>
> A:    Not at the moment, no.
>
> Q:    Okay.
>
> A:    I have no physical evidence.
>
> Q:    . . . Do you have any evidence of anything that any representative of Clark said to you indicating that they were discriminating against you because of your sex?
>
> A:    No.
>
> Q:    Have you seen anything in writing from anybody at Clark, representing Clark, that they were discriminating against you because of your sex?
>
> A:    No.

---

[3] In the context of respondents disciplined for violating sexual misconduct policies, Title IX claims typically take one of two forms: (1) the respondent alleges that bias in the investigation and disciplinary process led to an erroneous outcome, or (2) the respondent alleges that the school selectively enforced its sexual misconduct policies against him or her. Here, Doe seeks to recover under the "erroneous outcome" theory of liability. *See* Compl. ¶¶ 168-169.

> Q:     Can you think of any information in any form that would indicate that anyone representing Clark discriminated against you on the basis of your sex?
>
> A:      No.

Doe Dep. 10:24-11:22. Later, in response to questions from Smith's counsel, Doe doubled down on his adamant denial of any discrimination based on his sex:

> Q:     . . . Well, you said that there was no – no discriminatory comment made to you by anyone by Clark; correct?
>
> A:     Correct.
>
> Q:     And there was no documentation that ever was shown to you or given to you that there was a discrimination against you; correct?
>
> A:     Correct.
>
> . . .
>
> Q:     And there was no other information or any other indication of discrimination against you from Clark University; correct? That's what you testified earlier.
>
> A:     Correct.

Doe Dep. 174:21-175:13.

Doe cannot prevail on a claim for sex discrimination under Title IX when he admits he has no evidence whatsoever in support of that claim. *See Doe v. Williams Coll.*, 530 F. Supp. 3d 92, 115-16 (D. Mass. 2021) (entering summary judgment for college absent evidence of gender bias); *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 159 (D. Mass. 2017) (holding plaintiff must offer "non-speculative evidence . . . of discrimination based on sex" and dismissing case where plaintiff offers "no evidence of any kind beyond conjecture" that "discrimination on the basis of gender was a motivating factor" in the outcome). Dismissal of Doe's claim on summary judgment is appropriate. *See, e.g.*, *Quinn v. City of Boston*, 325 F.3d 18, 28 (1st Cir. 2003) ("The

role of summary judgment is to pierce the boilerplate of the pleadings and provide a means for

prompt disposition of cases in which no trial-worthy issue exists." (citations omitted)).

**B.      Doe's Title IX claim also fails because, even if he could identify any evidence suggesting discrimination, he cannot causally connect any gender bias to the outcome of the SOHB process.**

Even assuming Doe had any evidence suggesting gender bias, there is no connection

between any such bias and the outcome of Clark's sexual offense proceeding. To prevail on a

Title IX discrimination claim as a respondent alleging an erroneous outcome (as Doe alleges in

¶¶ 168-169 of his Complaint), Doe must demonstrate: (1) that there was a flawed proceeding, (2)

that led to an erroneous outcome that was adverse to him, and (3) that specific circumstances

causally connect gender bias to the erroneous outcome. *Doe v. Amherst Coll.*, 238 F. Supp. 3d

195, 222 (D. Mass. 2017). On that third element, Doe must "demonstrate the existence of

particularized circumstances suggesting that gender bias was a motivating factor behind the

erroneous finding." *Id.* at 223. The evidence offered must "cast some articulable doubt on the

accuracy of the outcome of the disciplinary proceeding and indicate that gender bias was a

motivating factor." *Doe v. Trustees of Boston Coll.*, 892 F.3d 67, 90-91 (1st Cir. 2018) (cleaned

up) ("*Boston College I*"). "Allegations of a procedurally or otherwise flawed proceeding that has

led to an adverse and erroneous outcome combined with a conclusory allegation of gender

discrimination is not sufficient." *Doe v. Harvard Univ.*, No. 1:18-cv-12150-IT, 2020 WL

2769945, at *7 (D. Mass. May 28, 2020) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d

Cir. 1994)).

Any evidence Doe attempts to conjure in response to Clark's motion for summary

judgment would be purely speculative and conclusory. For instance, his suggestion in the

Complaint that Ms. Levey, the Title IX Coordinator, is "biased against accused male sex

offenders" because of "her professional experience with sexual violence against women"

(Compl. ¶ 115) is not supported by any deposition testimony or record evidence. In any event, there is no evidence that Levey (even if biased, which Clark strongly disputes) had any involvement in the investigation or the decision of the SOHB. Further, Doe testified that he did not have any reason to believe the investigators or SOHB members were biased against him based on his sex. SOF ¶¶ 37, 70.

Doe asserts in conclusory manner and without any evidence that "female students" are afforded "basic fairness" "to a far greater extent than . . . male students accused of sexual misconduct." Compl. ¶ 96. There is *no* evidence in support of these conclusory statements. Doe's speculative statements alone are insufficient to avoid summary judgment. *See, e.g.*, *Lang v. Wal-Mart Stores E., L.P.*, 813 F.3d 447, 460 (1st Cir. 2016) ("a party cannot ward off summary judgment with proffers that depend on arrant speculation, optimistic surmise, or farfetched inference" (cleaned up)); *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 95 (1st Cir. 1996) ("Speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion." (quotations omitted)). For these reasons, summary judgment should be entered for Clark on Doe's Title IX claim.

## II.     Doe's breach-of-contract claim fails.

Claims for breach of contract arising out of policies of private educational institutions are analyzed under two tests. *See Doe v. Stonehill Coll.*, No. 20-10468-LTS, 2021 WL 706228, at *12 (D. Mass. Feb. 23, 2021) (appeal filed). The first examines the actual language and terms of the alleged contract between the college and student and "asks whether the reasonable expectations of the parties have been met." *Id.* (quoting *Doe v. Trustees of Boston College*, 942 F.3d 527, 533 (1st Cir. 2019) ("*Boston College II*")). The second asks whether the procedures followed were conducted with basic fairness as defined by Massachusetts law. *Id.* "Overall,

Massachusetts courts are 'chary about interfering with academic and disciplinary decisions made by private colleges and universities' and colleges 'must have broad discretion in determining appropriate sanctions for violations of its policies.'" *Id.* (quoting *Schaer v. Brandeis Univ.*, 432 Mass. 474, 482 (2000)). Doe's claims fail both tests.

### A.    The University followed and did not breach its policies, meeting Doe's reasonable expectations.

Clark did not materially breach any of its policies or contractual obligations. The relevant policies are contained in Clark's 2018-2019 Student Handbook (ECF Dkt. 1-8), including its Title IX Policy on pages 40-44, and Clark's Title IX Process Policy (ECF Dkt. 1-9). Doe agrees that the procedures and policies beginning on page 40 of the Student Handbook are the policies that governed sexual offense cases involving Clark students in the Fall of 2018. SOF ¶ 23. Doe also agrees that he reviewed the Title IX Process Policy and knew that it applied to his incident. *Id.* at ¶¶ 27-28, 30-31. Doe further agrees that Clark followed all relevant portions of those policies. *See Id.* at ¶¶ 30, 33, 35, 37, 41, 47, 49, 51, 52, 59, 61, 67, 70, 86, 91, 93-94. These admissions confirm Clark met Doe's "reasonable expectations."

Specifically, contrary to the suggestion in his Complaint that he was not informed of the allegations against him (Compl. ¶ 51), Doe admitted that the notice he received from Keyes met the policy's requirement of including a brief description of the allegations.[4] SOF ¶ 30. Of course, Doe knew from the very moment of the incident—when Smith accused him of not wearing a condom immediately after the second instance of intercourse—what the accusations were. *See id.* at ¶ 15. Doe also admitted that the appointed investigators were fair and impartial (SOF ¶ 37),

---

[4] Doe further testified that at his first meeting with Keyes during the investigatory phase, he was aware he was accused of sexual exploitation and sexual assault. SOF ¶ 45. At his second meeting with Keyes, he was made fully aware of what Smith was accusing him of. *Id.* Keyes testified that he informed Doe of the nature of the charges and accusations against him in their first meeting. *Id.* at ¶ 44. When the SOHB convened and Doe gave his statement, Doe believes he knew everything he needed to know about what Smith had alleged. *Id.* at ¶ 76.

that he was provided access to the investigation report (SOF ¶ 61), that he had the opportunity to submit a written response (which Clark permitted him to do through legal counsel) (*Id.*), and that he had no reason to believe the SOHB members were biased (SOF ¶ 70). The undisputed facts, from Doe's own deposition testimony, completely undermine the unsupported allegations in Doe's Complaint, and there is no evidence that would create a disputed issue of material fact to suggest that Clark breached its contractual promises or failed to meet Doe's reasonable expectations.[5]

To the extent Doe argues that the University breached its policy because of the role played by the Chair of the SOHB, that argument is insufficient to establish breach of contract.[6] The policy states, "The Chair will oversee the process but will not be involved in rendering a decision." ECF Dkt. 1-9 at 3 (Part III(D)). SOHB Chair Johnson chaired the live hearing and provided explanations of applicable policy definitions and the preponderance-of-the-evidence standard to other SOHB members during an off-the-record break. SOF ¶¶ 78, 80-82. She explained during that break that it "does constitute exploitation if someone doesn't use a condom if the other party was expect[ing them] to," (Nolan Decl. Ex. 12 at 18), and also cautioned the other Board members during the break against reaching any conclusion before Doe had the chance to speak at the hearing. SOF ¶ 78; Nolan Decl. Ex. 12 at 22-23.

---

[5] If Doe argues that the Title IX procedure should only have applied to cases of violent sexual misconduct and his hearing for sexual exploitation (which he presumes was nonviolent) should have been conducted under the general student conduct board procedure, that argument fails for several reasons. First, he acknowledged at deposition that the Title IX policies applied to his misconduct. SOF ¶¶ 23, 28. Second, the handbook is clear that it is up to the Title IX Coordinator to determine if conduct triggers the Sexual Offense Policy (ECF Dkt. 1-8 (Handbook at 40)), and Sexual Exploitation is specifically listed and defined in the Policy as a Title IX violation (ECF Dkt. 1-8 (Handbook at 40)). The Title IX Process Policy states that it applies following "a report that a student has engaged in conduct that could constitute a sexual offense" (ECK Dkt. 1-9 at 1). Third, Doe was informed from the outset that the Title IX policies and procedures would apply to the accusations against him. SOF ¶ 31.

[6] Doe's counsel suggested in a pre-motion conference between counsel pursuant to Local Rule 7.1(a)(2) that Doe may focus his breach-of-contract argument on this allegation.

Dr. Johnson's activities do not create any disputed issue of material fact to suggest that Clark violated any contractually enforceable promise or Doe's reasonable expectations. First, the language of the policy itself is not sufficiently definite or certain on this point to create any obligation by the University. *See G v. Fay Sch., Inc.*, 282 F. Supp. 3d 381, 399 (D. Mass. 2017) (finding handbook terms not sufficiently definite or certain to form contractual obligations). Dr. Johnson's activities were part of her role "oversee[ing] the process"—not part of "rendering a decision." The term "render" has multiple meanings. It could mean, for example, "to transmit to another: deliver."[7] It could also mean "to cause to be or become: make."[8] Either way, Dr. Johnson's general, explanatory comments fall far short of causing or making any decision. Dr. Johnson assisted the SOHB members with the process of the hearing and explained applicable definitions, but she did not participate in the deliberations or discussions, did not lead the members to vote one way or the other or express her opinion, and did not participate in the vote. SOF ¶¶ 80-82. At Dr. Johnson's direction, the three SOHB members voted on pieces of paper, and all three voted to find Doe responsible. *Id.* at ¶ 83. Dr. Johnson did not vote or participate in the deliberations; therefore, she did not cause, make, or render the decision. *See id.* at ¶¶ 80-82.

Second, with respect to breach-of-contract claims by a student against a university based on a student handbook or similar policy, courts employ a "reasonable expectations standard" and "ask what meaning the party making the manifestation, the university, should reasonably expect the other party, the student, to give it. " *Boston College I*, 892 F.3d at 80 (citations omitted). A breach occurs when the university has failed to meet the student's reasonable expectations based on the policy. *Walker v. Pres. & Fellows of Harvard Coll.*, 840 F.3d 57, 61-62 (1st Cir. 2016). "In the context of disciplinary hearings, [courts] 'review the procedures followed to ensure that

---

[7] https://www.merriam-webster.com/dictionary/render
[8] *Id.*

they fall within the range of reasonable expectations of one reading the relevant rules.'" *Roe v. Northeastern Univ.*, No. CV 16-03335-C, 2019 WL 1141291, at *13 (Mass. Super. Mar. 8, 2019). Doe could not have had any reasonable expectation that the Chair of the hearing who was charged with overseeing the process would have *no* involvement in the process or no discussion of the matter with the SOHB members. The Chair's actions—explaining definitions and guiding the overall process but abstaining from deliberations or voting—comport with what would be a reasonable expectation based on the policy, which states the Chair would oversee the process but not participate in making the decision.

Indeed, the Chair informed the parties at the start of the hearing that "Although I do not vote, I can and will likely ask questions when I feel that additional information may be beneficial to the Board's overall understanding of the situation" and "I am also charged with ensuring that the Board members have as clear an understanding of and as much information regarding this incident as possible." Nolan Decl. Ex. 12 at 1. The policy explains that the Chair is responsible for convening the Board, overseeing the process, and sending the letter indicating the findings. A reasonable student would expect the Chair to have some involvement in the process, as the Chair is responsible for overseeing it and explained to Doe and Smith that she would have some involvement in the process. Providing some general, abstract explanation to the Board members regarding their tasks and the applicable definitions fits well within the range of reasonable expectations under the policy for the role of Chair. *See Northeastern Univ.*, 2019 WL 1141291 at *13.

Third, even if the actions of the Chair were inconsistent with the policy (they were not), a minor policy violation would not qualify as a material breach of contract entitling Doe to recover. *Cf. Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 599 (D. Mass. 2016) (denying motion

to dismiss where it was plausible that the university's failure to follow a provision of its policy "was a *material* breach of contract" (emphasis added)). Nothing in Title IX-related precedent or the highly permissive basic-fairness standard under Massachusetts law (see discussion below) would have precluded Clark from adopting a policy whereby SOHB Chairs *did* participate substantively in deliberations, *did* vote with other board members, or even rendered a decision all by themselves without input from a broader panel. There is no evidence of record that Dr. Johnson was biased against Doe, that Dr. Johnson had a conflict of interest, or that there was any substantive reason why her participation in rendering a decision, even if she had done so (which she did not), would have affected any substantive right or interest of Doe's. Instead, the most that could be said if Dr. Johnson had, *arguendo*, participated in "rendering" a decision is that there was a highly technical procedural error with no substantive effects whatsoever. No disputed issue of fact on that point should be deemed material enough to justify the time and effort it would take this Court and a jury to analyze it, especially where no damages could reasonably be attributed to whether the SOHB's "rendering" of the decision did or did not involve Dr. Johnson.

In sum, with respect to a student handbook, all that is required is that a school meet reasonable expectations created by the policy. Here, Clark clearly did so in all material ways, and there are no material, disputed facts to the contrary.

B.   **The University policies and its actions in this matter provided Doe the basic fairness required by Massachusetts law.**

While it is clear that Clark did not breach the terms of any contract or Doe's reasonable expectations based on them, courts applying Massachusetts law also consider "whether the allegations support an inference that an academic institution failed to provide a process conducted with 'basic fairness' to the student when analyzing a student's claim as part of the breach of contract analysis." *Sonoiki v. Harvard Univ.*, No. 19-cv-12172, 2020 WL 3416516, at

*8 (D. Mass. June 22, 2020). "This inquiry . . . requires the Court to assess whether the university provided some minimum level of fair play to the student during the disciplinary hearing. . . . It does not, however, require adherence to the standards of due process guaranteed to criminal defendants or to abide by rules of evidence adopted by courts." *Id.* (cleaned up). Generally, "a disciplinary decision must be arbitrary or capricious or made in bad faith to violate basic fairness." *Id.* at *10.

The First Circuit recently analyzed this "basic fairness" requirement in *Doe v. Trustees of Boston College*, 942 F.3d 527 (1st Cir. 2019) ("*Boston College II*"). It confirmed that "a private university need not comply with federal due process to meet the basic fairness requirement in disciplining students." 942 F.3d at 533-34. Under Massachusetts law, basic fairness can be found even where the accused student is not permitted to give *any* input during the investigation, is not entitled to *any* hearing, is not provided an opportunity to seek counsel, and is not provided *any* access to the evidence against them. *Id.* at 534; *see Williams Coll.*, 530 F. Supp. 3d at 120 ("Basic fairness does not require a live hearing, quasi-cross-examination, access to evidence, or even the opportunity for a student accused of misconduct to seek advice or counsel."); *Stonehill Coll.*, 2021 WL 706228 at *14 ("basic fairness under Massachusetts law does not entitle parties to a live hearing or cross-examination" and federal courts "must take care not to extend state law beyond its well-marked boundaries" (citations omitted)). The *Boston College II* decision made clear that there is no requirement under Massachusetts law for the accused student to have any opportunity to cross examine or pose questions to the accuser, whether directly or indirectly. 942 F.3d at 534. Further, basic fairness does not require any right to an appeal. *Williams Coll.*, 530 F. Supp. 3d at 121. Additionally, the *Boston College II* decision emphasized that federal district

courts "are not free to extend the reach of state law" or "redefine the requirements of contractual basic fairness." 942 F.3d at 535-36.

Clark's procedures used in Doe's case meet and far exceed the requirements of basic fairness. The process and hearing board decision was not arbitrary or capricious or made in bad faith, and there is no evidence of record, following a robust discovery and deposition process, to suggest otherwise. Doe's arguments that he should have been entitled to cross-examine Smith or should have had access to additional materials (*see* Compl. ¶¶ 47, 57-58, 61, 65, 73-75, 80-82, 165) do not establish any basic fairness violation under the First Circuit law established in *Boston College II*. That remains true even if Doe focuses on the question of whether Dr. Johnson participated in "rendering" the SOHB's decision; absent evidence that Dr. Johnson was biased against Doe or had a conflict of interest, the technical question of whether she "oversaw" or, *arguendo*, participated in rendering a decision in, the process at issue has no implications whatsoever for the larger question of whether Doe was provided a process that satisfied the flexible basic-fairness standard. Accordingly, Doe cannot survive summary judgment on his breach-of-contract claim.

## III.    Doe cannot establish a breach of the covenant of good faith and fair dealing.

Every contract in Massachusetts includes an implied covenant of good faith and fair dealing. *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471-73 (1991). It provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Id.* at 471-72. The implied covenant, however, does not "create rights and duties not otherwise provided for in the existing contractual relationship . . . but rather concerns the manner of performance." *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005) (quoting *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004)). Typically, the covenant applies "where a party enters a contract without

any intention of completing it" or "where the asserted reason for terminating the contract concealed an illegitimate one." *Pazol v. Tough Mudder Inc.*, 384 F. Supp. 3d 191, 196 (D. Mass 2019) (Hillman, J.). There is no evidence of either scenario here.

In the Title IX context, analysis of claims for breach of the covenant of good faith and fair dealing "is essentially identical to the analysis under the breach of contract claim and the standard applied to the basic fairness of the proceedings." *Stonehill Coll.*, 2021 WL 706228 at *14 (quoting *Sonoiki*, 2020 WL 3416516 at *15). Clark complied with its Title IX and sexual misconduct policies, provided the basic fairness required by law, and did not act in bad faith. Because Doe cannot set forth any evidence of bad faith by Clark, summary judgment must enter on his good-faith-and-fair-dealing claim. *See Shri Gayatri, LLC v. Charter Oak Fire Ins. Co.*, 206 F. Supp. 3d 684, 699 (D. Mass. 2016) (Hillman, J.) (granting summary judgment where "the undisputed facts fail to establish a lack of good faith").

**Conclusion**

For all of the foregoing reasons, Clark respectfully requests that the Court enter summary judgment in its favor on all remaining counts of Doe's Complaint.

Respectfully submitted,

CLARK UNIVERSITY

By its attorneys,

/s/ Jeffrey J. Nolan
/s/ Andrew E. Silvia
Jeffrey J. Nolan (BBO #625091)
*jeffrey.nolan@hklaw.com*
Andrew E. Silvia (BBO #681922)
*andrew.silvia@hklaw.com*
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA  02116
(617) 523-2700

Dated: November 23, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the attorney of record for each party indicated as non-registered participants on this 23rd day of November, 2021.

*/s/ Jeffrey J. Nolan*
Jeffrey J. Nolan