**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **JOHN DOE,** | ) ) ) | **CIVIL ACTION** |
| **Plaintiff,** | ) ) | **NO. 4:19-40050-TSH** |
| v. | ) ) ) |  |
| **CLARK UNIVERSITY,** | ) ) |  |
| **Defendant.** | ) ) |  |

**ORDER AND MEMORANDUM ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 97)**

**August 22, 2022**

**HILLMAN, D.J.**

Plaintiff John Doe brought this action against defendant Clark University ("Clark"), claiming Title IX gender discrimination, breach of contract, and breach of the covenant of good faith and fair dealing. During his freshman year, Doe had sexual intercourse with Jane Smith, a sophomore. Smith consented to sexual intercourse on the condition that Doe use a condom. Afterwards, Smith accused Doe of not using a condom. Clark investigated the incident, held a hearing, and found Doe in violation of its Sexual Offense Policy.

In this action, Doe contends that Clark got it wrong; he asserts that he used a condom during sexual intercourse with Smith, and that Clark's finding to the contrary was arbitrary and based on gender bias. Clark moves for summary judgment. (Docket No. 97). Because there is no evidence in the record of gender discrimination, Doe's Title IX claim fails. Moreover, because Clark followed its policies and did not act arbitrarily, Doe's breach of contract and breach of the covenant

good faith and fair dealing claims likewise fail.  Accordingly, the Court ***grants*** summary judgment in Clark's favor.

## Background

### 1. The Incident

In September 2018, Jane Smith and John Doe were students at Clark.  Smith was a sophomore, and Doe was a freshman.  Smith was Doe's peer advisor.  Late one night, Smith invited Doe to her on-campus residence.  Both had been drinking.  Alone in Smith's bedroom, Doe and Smith engaged in consensual vaginal intercourse using a condom.  Over time, Doe lost his erection.  With Smith's consent, Doe removed the condom, and Smith performed oral sex on Doe.  Doe regained his erection, and the two agreed to resume vaginal intercourse.  Smith consented to vaginal intercourse on the condition that Doe use a condom.  Doe told Smith that he did not like using condoms.

According to Smith, in the second instance of vaginal intercourse, Doe ejaculated.  At her deposition, Smith testified that, immediately after intercourse, she saw semen on her leg, leading her to believe that Doe had not been using a condom.  Smith asked Doe whether he had used a condom; Doe said that he had.  Smith asked Doe to show her the condom; Doe did not show her one.  Smith asked Doe whether she needed to take "Plan B" contraception; Doe told her that it was unnecessary because he had used a condom, but that she could do so if she wished.  Smith later told Clark investigators, "I wanted to wash him off me right after so I got into the shower."

According to Doe, in the second instance of vaginal intercourse, he faked an orgasm because he was beginning to lose his erection.  After Smith accused him of not using a condom, Doe showed Smith both condoms -- one from each instance of vaginal intercourse.  When Doe left

Smith's residence, he took both condoms with him and, later that night, threw them away outside his own residence.

The next day, Doe texted Smith, "Hey, you good?" That evening, without a response, Doe texted Smith again, asking if he could retrieve his belt. The two met, and Smith insisted that Doe pay for Plan B. Later, Smith texted Doe,

> The total for plan B comes to 68$. You have my Venmo [an electronic payment application], I expect the money by Tuesday absolute latest. It is not fair that only I am expected to pay for what you did. What you did is not only unforgivable but non consensual (which you would have learned all about if you didn't skip all of your meetings during week one.) I have every right to go to the school and report you. don't give me another reason to.

Doe agreed to split the cost of Plan B and paid Smith $34. A few days later, Smith informed a resident advisor about the incident, which was reported to Lynn Levey, Clark's Title IX Coordinator. Smith then spoke to Levey by phone and in person, which initiated a Title IX investigation for sexual misconduct.

### 2. *Clark's Title IX Process and Sexual Offense Policy*

Clark's Title IX Process is outlined in Clark's 2018-2019 Student Handbook (the "Student Handbook"), which Doe received at the beginning of his freshman year, as well as a separate process document. The Title IX Process has five phases: (1) initial assessment, (2) investigation, (3) determination of responsibility, (4) determination of sanctions, and (5) appeal. At the initial assessment phase, the Title IX Coordinator assesses whether reported conduct triggers Clark's Sexual Offense Policy and whether any interim measures, such as a no-contact order, should be put in place.

Clark's Sexual Offense Policy, also outlined in the Student Handbook, prohibits, among other things, sexual misconduct, sexual exploitation, sexual harassment, and sexual assault. The Sexual Offense Policy defines "sexual exploitation" as "when a student takes non-consensual or

abusive sexual advantage of another for their own advantage or benefit," such as by "going beyond the boundaries of consent."

At the investigation phase, Clark's Title IX Coordinator provides the Complainant (the individual who experienced the reported conduct) and the Respondent (the individual who is alleged to have violated the Sexual Offense Policy) with written notice of a brief description of the allegations, the portions of the Sexual Offense Policy alleged to have been violated, and any interim measures put in place. The Title IX Coordinator then designates at least one investigator to prepare an investigative report. The Title IX Coordinator provides the parties with the name of the investigator, permitting the parties to identify any conflicts or potential conflicts of interest.

The investigator then separately interviews the Complainant and Respondent, as well as any other witnesses the investigator deems relevant. The parties may provide the investigator with relevant documents and the names of witnesses. The parties may have an advisor present during any meeting, interview, or hearing related to the Sexual Offense Policy, but advisors may not actively participate in the meeting, interview, or hearing. Neither party -- nor their advisors -- may cross-examine the other party.

The investigator then prepares an investigative report, which includes a summary of the facts and highlights consistent and inconsistent pieces of information. The parties may review the investigative report and provide written comments to the investigator. The report does not include a determination as to whether the Sexual Offense Policy has been violated.

At the determination of responsibility phase, the Title IX Coordinator asks the Chair of the Sexual Offense Hearing Board (the "SOHB") to convene a three-member SOHB panel from an established pool of Clark community members trained to hear and decide sexual offence cases. The SOHB panel decides, after a hearing at which both parties can attend, whether the Respondent

is responsible for violating the Sexual Offense Policy. All findings and determinations of responsibility under the Sexual Offense Policy are made using a preponderance of the evidence standard. The parties are notified of the members of the SOHB panel and may identify any conflicts or potential conflicts of interest. The Chair of the SOHB oversees the process but is not involved in rendering a decision.

At the determination of sanctions phase, the SOHB panel, if it finds the Respondent responsible, determines an appropriate sanction. Sanctions may include, among other things, expulsion, suspension, education, no-contact orders, and restrictions on extracurricular programs or activities. At the appeal phase, either party may appeal the SOHB's decision to Clark's Provost based on prejudicial procedural error by the investigator or newly discovered material information.

### 3. Clark's Proceedings against Doe

Upon receiving Smith's complaint, Levey, the Title IX Coordinator, assigned Adam Keyes, the Deputy Title IX Coordinator, and Holly Dolan, a Professor of Practice, to investigate. On October 2, 2018, Keyes sent Doe two letters via email. The first ordered Doe not to have contact with Smith until further notice. The second informed Doe that he was under review for possible violations of the Sexual Offense Policy, specifically, for possible sexual exploitation and sexual assault; that Keyes and Dolan would be interviewing him; and that he had a right to be accompanied by an advisor, whose role would be limited.

Doe was aware that Clark's Title IX Process would apply to the charges against him, and, after receiving the letters, he reviewed the policies. Doe did not inform Clark of any conflicts with Keyes or Dolan. Keyes met with Doe twice and Smith twice; Dolan was present for all but one of the meetings with Doe. At the second meeting with Doe, Keyes informed Doe that he was not being charged with sexual assault. Doe understood that Smith's main claim against him was that

he had not used a condom during sexual intercourse. Doe submitted documents, including text messages between himself and Smith, to Keyes and Dolan. Doe did not identify any witnesses; neither did Smith.

On October 18, 2018, Keyes and Dolan issued their investigative report, which concluded that a SOHB panel should be convened to determine whether Doe was responsible for sexual exploitation under the Sexual Offense Policy. The report provided a summary of facts and pointed out some consistencies and inconsistencies between Doe's and Smith's versions of events. Doe reviewed the report and worked with his legal counsel to provide a written response.

Clark then convened an SOHB. The Chair of the SOHB was Nadja Johnson (the Assistant Dean of Students), and the SOHB panel was comprised of Evette Walters (the Director of the Academic Advising Center), Jeff McMaster (the Director of Student Accounts) and Cherilyn Bonin (a Student Success Specialist). Doe did not inform Clark of any conflicts with Johnson, Walters, McMaster, or Bonin.

The SOHB held a hearing on November 16, 2018. During the hearing, which was audio-recorded, Johnson, Walters, McMaster, and Bonin questioned Keyes regarding the investigative report, heard a statement from and questioned Smith, and heard a statement from and questioned Doe. During a break in the hearing -- after the group had questioned Keyes and Smith but before the group had heard from Doe -- Johnson reminded the panel that they were to apply a preponderance of the evidence standard, that exploitation under the policy occurs when one party does not use a condom contrary the other party's expectation, and that part of the deliberations should concern sanctions. McMaster indicated that it was more likely than not that "consensual boundaries were crossed," at least based on what he had read and heard "so far." Walters, McMaster, and Bonin discussed how it was "weird" that Doe had taken the condoms and wrappers

6

with him when he left Smith's residence. Johnson reminded them that Doe still had a chance to speak.

Johnson was present for but did not participate in the deliberations. Following the deliberations, Johnson asked Walters, McMaster, and Bonin each to vote "responsible" or "not responsible" on a piece of paper; thereafter, Johnson reported that the SOHB had unanimously voted "responsible." At their depositions, Walters, McMaster, and Bonin each testified that they found it persuasive that Smith had stated that she had needed to shower immediately after the incident to wash Doe off her.

On November 21, 2018, Johnson sent a letter to Doe, notifying him that the SOHB had found him responsible for violating the sexual exploitation provision of the Sexual Offense Policy. To sanction him for his conduct, Clark required Doe to participate in educational training, restricted him from holding student leadership roles on campus for one academic year, and ordered him not to have contact with Smith for an additional academic year. Clark denied Doe's appeal.

The educational training component of the sanctions required Doe to write a two-to-three-page paper reflecting on who was hurt, harmed, or affected by the incident. Although the prompt stated that Doe was "not required" to discuss how Smith was affected, Doe felt that writing the paper would amount to "confessing" or "admitting guilt." Doe therefore chose not to complete the assignment. Thereafter, Doe was referred to the University Conduct Board and found in violation of the "Non-Compliance with a University Official" provision of the Student Handbook. The University Conduct Board subjected Doe to an additional sanction of writing a second, longer reflection paper. Doe has not completed either assignment.

*4. Procedural History*

Doe commenced this action on April 5, 2019, claiming that Clark was liable for Title IX gender discrimination (Count I), breach of contract (Count II), and breach of the covenant of good faith and fair dealing (Count III). Doe also claimed that various Clark administrators were liable to Title IX gender discrimination, and that both Clark and Smith were liable for defamation. The Court dismissed the Title IX claim against the administrators. (Docket No. 37). Doe voluntarily dismissed the defamation claim against Smith. (Docket No. 109). Clark now moves for summary judgment. (Docket No. 97).

## **Legal Standard**

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is "genuine" when a reasonable factfinder could resolve it in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it may affect the outcome of the suit. *Id.* When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

## **Discussion**

### *1. Title IX Gender Discrimination*

Doe alleges that Clark is liable for Title IX gender discrimination. Title IX provides, "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Title IX claims may be premised on an "erroneous outcome," where the plaintiff claims that he or she is innocent and was wrongly found to have committed an offense, or "selective enforcement," where

the plaintiff claims that, regardless of guilt or innocence, the severity of the penalty or decision to initiate proceedings was based on gender. *See Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 185 (D.R.I. 2016). Doe's claim appears to be premised on an erroneous outcome.

To prevail on a Title IX claim premised on an erroneous outcome, the plaintiff must establish (1) some articulable doubt concerning the accuracy of the outcome and (2) that gender bias was a motivating factor. *See Doe v. Trs. of Boston Coll.*, 892 F.3d 67, 91 (1st Cir. 2018). The plaintiff "cannot merely rest on superficial assertions of discrimination;" he must establish that "particular circumstances suggest that gender bias was a motivating factor." *Id.* at 91 (quoting *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994)).

Here, even if the SOHB wrongly found Doe in violation of the Sexual Offense Policy, the record contains no evidence suggesting that gender was a motivating factor in that finding. At his deposition, Doe testified that he had no information indicating that Clark treated him unfairly because of his sex. In response to Clark's statement of material facts, Doe suggests that this was only his "opinion on the date of testimony." But Doe has pointed to no evidence in the record to suggest otherwise. Rather, Doe argues that because, in his view,[1] his version of events is more credible than Smith's, Clark must have discriminated against him based on his gender when it chose to believe Smith, not him. Doe's argument is nothing more than "superficial assertions of discrimination." *Boston Coll.*, 892 F.3d at 91. Accordingly, summary judgment on Doe's Title IX claim is warranted.

*2. Breach of Contract*

---

[1] Doe asserts that his version of events is more credible than Smith's because he observed first-hand whether he used a condom, whereas Smith only inferred that he did not use a condom because she saw him without one after intercourse and observed semen on her leg.

Doe alleges that Clark is liable for breach of contract by arbitrarily determining that he violated the Sexual Offense Policy. Clark's relationship with Doe is based on state contract law. *See Cloud v. Trs. of Boston Univ.*, 720 F.2d 721, 724 (1st Cir. 1983). "The relevant terms of the contractual relationship between a student and a university typically include language found in the university's student handbook." *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34 (1st Cir. 2007). Whether a university has breached its contract with a student turns on whether the university has failed to meet the student's reasonable expectations from the contract. *See Doe v. Trs. of Boston Coll.*, 942 F.3d 527, 533 (1st Cir. 2019). Beyond the student's reasonable expectations, universities must meet a standard of basic fairness and may not act arbitrarily or capaciously in sanctioning a student. *See Coveney v. President & Trs. of Coll. of Holy Cross*, 445 N.E.2d 136, 138-39 (Mass. 1983).

Clark argues that summary judgment is warranted because Doe was aware of the relevant polices, and Clark followed those policies. Specifically, Clark points out that, pursuant to the procedures outlined in the Student Handbook and Title IX Process: Doe was aware of the allegations against him from the start of the investigation; Doe did not identify any conflicts or potential conflicts with the investigators; Doe was provided access to the investigative report; Doe had an opportunity to submit a response to the investigative report (which he did); and Doe did not identify any conflicts or potential conflicts with the SOHB members. Thus, according to Clark, Doe's reasonable expectations must have been satisfied.

In response, Doe does not dispute that Clark followed its policies -- and, in consequence, does not dispute that his reasonable expectations were met. Rather, Doe takes issue with the focus of the proceedings, seemingly arguing that the SOHB's decision was arbitrary. Doe asserts that

the SOHB should have (1) inquired about where on Smith's body Smith saw semen, and (2) considered Smith's potential ulterior motive for complaining to the Clark.[2]

Doe's contention that the SOHB should have inquired about the location of semen on Smith's body is premised on an unsupported assertion that the location of semen on a person's body after intercourse is determinative of the question of condom use. To the contrary, the inference that Smith observed semen <u>anywhere</u> on her body reasonably supports a conclusion that Doe did not use a condom. Even if, as Doe argues, semen around a person's pubic area is more indicative of intercourse without a condom than semen on a person's leg, the SOHB's decision to believe Smith over Doe and find Doe in violation of the Sexual Offense Policy is not rendered arbitrary because it did not inquire where on Smith's body Smith saw semen.

Doe's contention regarding the SOHB's failure to consider Smith's potential ulterior motive for reporting Doe to Clark is similarly unavailing. During the break in the SOHB hearing, Walters questioned whether Smith would have reported the incident to Clark if Doe had fully paid for Plan B. In response, Johnson stated that they could not "use that" for their deliberations because it did not necessarily bear on the underlying incident. Johnson was not incorrect. The reason Smith reported Doe to Clark is inapposite to the question whether Doe used a condom. Even if Johnson's comment was misguided, moreover, it did not render the proceedings unfair or the outcome arbitrary. The record demonstrates that the SOHB carefully considered the conflicting versions of events and ultimately sided with Smith. No jury reasonably could conclude

---

[2] Without elaboration, Doe also references certain actions by the SOHB Chair, Johnson; specifically, Johnson telling the SOHB members to "remember that part of the deliberations is sanctions" and not preventing the SOHB members from discussing Doe's "weird" behavior after the incident. As Clark points out, however, Johnson's role, per the Student Handbook and Title IX Process, was to oversee the SOHB hearing but not to participate in rending a decision. It appears that Johnson acted in accordance with her stated role.

that Clark breached its contractual relationship with Doe. Accordingly, summary judgment on Doe's breach of contract claim is warranted.

### 3. Breach of the Covenant of Good Faith and Fair Dealing

Doe alleges that Clark breached the covenant of good faith and fair dealing. A covenant of good faith and fair dealing is implied in every contract, and a university has an obligation to adhere to this covenant when dealing with its students. *Boston Coll.*, 892 F.3d at 87; *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 180-81 (D. Mass. 2017). In the Title IX context, the analysis for a claim of breach of the covenant of good faith and fair dealing is "essentially identical" to the analysis for a claim of breach of contract. *See Doe v. Stonehill College, Inc.*, 2021 WL 706228, at 14 (D. Mass. Feb. 23, 2021). Courts look to the reasonable expectations of the parties and the basic fairness of the parties' dealings. *See id.* For the reasons stated with respect to Doe's breach of contract claim, summary judgment is warranted on Doe's breach of the covenant of good faith and fair dealing claim.

### Conclusion

The Court ***grants*** Clark's motion for summary judgment. (Docket No. 97).

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
